IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | | |
|---|---|---|
| DONNA ADAMS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | 1:20CV992 |
| | ) | |
| FIRST HORIZON BANK, formerly | ) | |
| d/b/a FIRST TENNESSEE BANK, | ) | |
| and ANNA LONG, | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION AND ORDER

**OSTEEN, JR., District Judge**

This matter comes before the court on a Motion to Remand to State Court, (Doc. 12), filed by Plaintiff Donna Adams and a Partial Motion to Dismiss, (Doc. 18), for failure to state a claim filed by Defendants First Horizon Bank and Anna Long. For the reasons described herein, this court finds that Plaintiff's motion to remand should be granted and that Defendants' motion to dismiss should be denied as moot.

I. **FACTUAL AND PROCEDURAL BACKGROUND**

A. **Factual Background**

The facts taken in the light most favorable to Plaintiff are as follows. Plaintiff Donna Adams is a North Carolina citizen. (Amended Complaint ("Am. Compl.") (Doc. 11) ¶ I.)

Plaintiff was employed at Defendant First Horizon Bank, ("the Bank"), formerly known as First Tennessee Bank, (id. ¶ IV), with its regional office located in Winston-Salem, North Carolina. (Id. ¶ II.) Defendant Anna Long ("Long") is an employee of the Bank who resides in Buncombe County, North Carolina. (Id. ¶ III.) She worked as the Bank's Regional Sales Manager. (Id. ¶ VI.)

Plaintiff "brought a large amount of business" into the Bank, and the Bank responded by giving "credit to a young manager who had nothing to do with bringing in that business." (Id. ¶ VIII.) Plaintiff was "excluded" from making presentations at meetings and conference calls, while her employer allowed younger and less experienced employees to make the presentations. (Id.) Plaintiff was also not chosen for a trip to corporate headquarters, while younger managers with less experience were chosen instead. (Id.) Finally, Defendant Long "frequently made comments referring to Donna Adams' age; and Long frequently asked [Adams] when she planned to retire from the Bank." (Id.)

Plaintiff also alleges that in May or June of 2019, "upper management changed a bank form, and requested Donna Adams to re-do the original document using the new format." (Id. ¶ XI.) Adams dealt with this as "a clerical matter." (Id.) Plaintiff

-2-

Case 1:20-cv-00992-WO-LPA   Document 30   Filed 09/09/21   Page 2 of 14

does not elaborate on how this incident related to her termination or any age discrimination against her.

On September 20, 2019, Defendant Long "falsely accused Donna Adams in writing of falsifying a bank record." (Id. ¶ IX.) Long made this writing "on the premises of First Tennessee Bank in North Carolina" and published the statement to other people "including but not limited to managers and employees" of the Bank. (Id. ¶ XVIII.)

This led to Adams' termination by the Bank that same day. (Id. ¶ X.) The Bank terminated at least six other bank employees "older than 40 years of age," mostly in their 50s and 60s, in spite of their excellent performance records. (Id. ¶¶ VII, XXIX.) These employees were replaced by younger managers. (Id. ¶ XII.) Plaintiff alleges that Long "instigated" these terminations. (Id. ¶ XXIX.)

### B. Procedural Background

Though Plaintiff filed her Complaint in state court, the case was removed to federal court on November 2, 2020. (Doc. 1.) The Complaint was amended on November 18, 2020. (Am. Compl. (Doc. 11).) Plaintiff alleges wrongful discharge - the "reason given for her termination was false and bogus" and "was a pretext for the Bank's age discrimination." (Id. ¶ X.) She also alleges Long committed libel, (id. ¶ XVIII), slander, (id.

-3-

¶ XXIII, and tortious interference with Plaintiff's employment contract, (id. ¶ XXIX). Plaintiff seeks both punitive and compensatory damages. (Id. at 11.)

Plaintiff filed a Motion to Remand on November 20, 2020, (Doc. 12), along with an accompanying Memorandum, (Doc. 13). Defendants responded, (Doc. 17), and Plaintiff replied, (Doc. 24). Defendants filed a Partial Motion to Dismiss on December 16, 2020, (Doc. 18), along with an accompanying Memorandum, (Doc. 19). Plaintiff responded, (Doc. 28), and Defendants replied, (Doc. 29).

## II    STANDARD OF REVIEW

Courts "should dismiss a complaint for lack of subject matter jurisdiction pursuant to Rule 12(b)(1) if the complaint fails to allege facts upon which subject matter jurisdiction can be based or if the jurisdictional allegations in the complaint are not true." McLaughlin v. Safway Servs., LLC, 429 F. App'x 347, 348 (4th Cir. 2011) (per curiam) (citation omitted); Adams v. Bain, 697 F.2d 1213, 1219 (4th Cir. 1982). Subject matter jurisdiction and removal to federal court are governed by 28 U.S.C. § 1441. Under 28 U.S.C. § 1441(b)(2), the inclusion of a defendant in the action who is a citizen of the same state as a plaintiff prevents removal. See Sharpe v. FCFS NC, Inc., No. 19cv985, 2020 WL 4016055, at *2 (M.D.N.C. July 16, 2020).

-4-

Here, it is undisputed that Defendant Long is a citizen of the same state as Plaintiff Adams. (See Am. Compl. (Doc. 11) ¶¶ I, III.)

"The burden of proof on a motion to remand falls on the party seeking to preserve the removal, not the party moving for remand." Artesian Enters., Inc. v. Shelton Brothers, Inc., No. 1:14-CV-894, 2014 WL 12672643, at *2 (M.D.N.C. Nov. 24, 2014) (internal citation omitted). Ultimately, "[a]ny doubts about removal must be resolved in favor of remand." UMLIC Consol., Inc. v. Spectrum Fin. Servs. Corp., 665 F. Supp. 2d 528, 532 (W.D.N.C. 2009); see also Shamrock Oil & Gas Corp. v. Sheets, 313 U.S. 100, 108-09 (1941); Turner v. CTS Con-Way Transp. Servs., No. 1:98CV00624, 1999 WL 1939243, at *1 (M.D.N.C. Apr. 28, 1999).

## III. **ANALYSIS**

This court will grant Plaintiff's Motion to Remand. Both Plaintiff Adams and Defendant Long are North Carolina citizens. (Am. Compl. (Doc. 11) ¶¶ I, III.) Ordinarily, this would preclude this court from exercising diversity jurisdiction over this case. See 28 U.S.C. § 1441(b)(2). However, Defendants allege that Long was fraudulently joined, and therefore should not be considered for jurisdictional purposes. (Defs.' Resp. to

-5-

Case 1:20-cv-00992-WO-LPA   Document 30   Filed 09/09/21   Page 5 of 14

Pl.'s Mot. to Remand to State Ct. ("Defs.' Resp.") (Doc. 17) at 2.)

The fraudulent joinder doctrine "effectively permits a district court to disregard, for jurisdictional purposes, the citizenship of certain nondiverse defendants, assume jurisdiction over a case, dismiss the nondiverse defendants, and thereby retain jurisdiction." Mayes v. Rapoport, 198 F.3d 457, 461 (4th Cir. 1999). To establish that fraudulent joinder has occurred, "Defendants must demonstrate either that there is 'no possibility' that [the plaintiff] would be able to establish a cause of action . . . in state court; or that there has been 'outright fraud' in [the plaintiff's] pleading of jurisdictional facts." Sharpe, 2020 WL 4016055, at *2 (quoting Marshall v. Manville Sales Corp., 6 F.3d 229, 232 (4th Cir. 1993)). There is no allegation of outright fraud in the pleading of the facts. Therefore, this court will assess whether there is "no possibility" Plaintiff could recover from Defendant Long, id., even if the factual allegations in the Complaint are accepted as true.

In analyzing whether any possibility of recovery exists,[1] this court is "to accept the parties joined on the face of the

---

[1] The court is permitted to examine the entire record in its inquiry. John S. Clark Co. v. Travelers Indem. Co., 359 F. Supp. 2d 429, 436 (M.D.N.C. 2004).

complaint unless joinder is clearly improper[,]" as "[t]o permit extensive litigation of the merits of a case while determining jurisdiction thwarts the purpose of jurisdictional rules." Hartley v. CSX Transp., Inc., 187 F.3d 422, 425 (4th Cir. 1999). The burden is on Defendants to "negate all possibility of recovery." Id. Fraudulent joinder is rare and "typically only found in cases of legal impossibility[.]" Flores v. Ethicon, Inc., 563 F. App'x 266, 269 (4th Cir. 2014). Ultimately, this high standard is "even more favorable to the plaintiff than the standard for ruling on a motion to dismiss under Fed. R. Civ. P. 12(b)(6)." Hartley, 187 F.3d at 424.

Plaintiff has brought three state law claims against Long: libel, slander, and tortious interference with contract. Regardless of whether Plaintiff's claims may be viable, there remains at least a "glimmer of hope" on the claims of libel and tortious interference, with all questions of law and fact resolved in Plaintiff's favor. Id. at 426.

    A.   **Libel**

Plaintiff alleges that Long's written statement "tended to impeach the Plaintiff in her profession, and tended to subject the Plaintiff to ridicule, contempt and disgrace." (Am. Compl. (Doc. 11) ¶ XVIII.) Plaintiff provides a vague accounting of the facts, which includes the place, time, and general recipients of

the statement. (Id.) Defendants take issue with Plaintiff's lack of particularity about the logistics and content of the allegedly libelous statement. (Defs.' Resp. (Doc. 17) at 3-4.) However, Plaintiff's level of factual information about these elements is not so vague that it completely eliminates any possibility of recovery. Plaintiff alleges the statement was made "on the premises of First Tennessee Bank in North Carolina[.]" (Am. Compl. (Doc. 11) ¶ XVIII); see Stutts v. Duke Power Co., 47 N.C. App. 76, 83-84, 266 S.E.2d 861, 866 (1980) (finding complaint was well-pled where location was only identified by name of employer and business). Plaintiff adequately alleges the recipients and time of the statement by claiming the "statement was published to third parties, including but not limited to managers and employees of First Tennessee Bank" on September 20, 2019. (Am. Compl. (Doc. 11) ¶ XVIII); see Moore v. Cox, 341 F. Supp. 2d 570, 575 (M.D.N.C. 2004) (Complaint sufficed where it alleged the defendant "communicated false information . . . to third persons . . . and the time frame in which the alleged misconduct took place."); Terry v. Swift Transp., No. 1:16cv256, 2017 WL 1013074, at *9 (M.D.N.C. Mar. 14, 2017), report and recommendation adopted, No. 1:16CV256, 2017 WL 2881141 (M.D.N.C. July 6, 2017) (Complaint "state[d] a plausible North Carolina defamation claim" where it

-8-

Case 1:20-cv-00992-WO-LPA   Document 30   Filed 09/09/21   Page 8 of 14

alleged the time frame of the false statements that were "reported to third parties"). Under federal procedural law, see Terry, 2017 WL 1013074, at *9 ("In evaluating Plaintiff's defamation claim, the Court applies state substantive law and federal procedural law."), the facts provided by Plaintiff, though sparse, are not vague enough to leave no possibility of recovery for the state law claim of libel. See Guider v. Hertz Corp., Rent-A-Car Div., No. 1:04CV00126, 2004 WL 1497611, at *5 (M.D.N.C. June 28, 2004) (finding that even where "[i]t is unclear from the Complaint who heard the statements, the context in which the statements were made, and the exact wording used[,] . . . it cannot be said that there would be no possibility of success against [the defendant] and that he was therefore fraudulently joined").

A legal question remains open regarding the libel claim. As the parties have noted, North Carolina courts are split on whether intra-office communications are "published" for purposes of libel actions.[2] In a Rule 12(b)(6) motion, this court might

---

[2] In White v. Trew, the North Carolina Court of Appeals held that "intra-office communications can be published in terms of defamation if the individual who reads the communications is independent of the process by which the communications were produced." 217 N.C. App. 574, 581, 720 S.E.2d 713, 720 (2011), rev'd on other grounds, 366 N.C. 360, 736 S.E.2d 166 (2013). In other words, the court in White found that the sharing of statements between employees of the same company
(Footnote continued)

-9-

analyze this legal question regarding intra-office communications. However, at this stage, where this legal question must be assumed resolved in favor of Plaintiff, there remains a "glimmer of hope" for Plaintiff's libel claim. Hartley, 187 F.3d at 426. This alone is adequate to require remand.

B.  **Slander**

Plaintiff's slander claim is not adequate to justify joinder on its own. "Libel encompasses any false, written publication while slander encompasses a false oral communication." Diagnostic Devices, Inc. v. Pharma Supply, Inc.,

---

could constitute publication. However, after the holding in White was reversed on other grounds, almost every North Carolina court that took up the issue began interpreting intra-office communications differently. In 2013, the Western District of North Carolina held that "[i]n the employment context, agents and employees of a single employer are not considered third persons to the employer or to each other." Reikowski v. Int'l Innovation Co. USA, No. 3:12CV854-GCM, 2013 WL 526489, at *3 (W.D.N.C. Feb. 11, 2013). The Reikowski court viewed intra-office communications differently from the White court, finding "no publication occurs when statements are only communicated between officers, employees and agents of a single employer." Id.; see also Dale v. Red Hat, Inc., No. 5:18-CV-262-BO, 2018 WL 6172516, at *3 (E.D.N.C. Nov. 26, 2018) ("[W]here, as here, the communication of allegedly libelous statements is between only employees of a single employer, no publication of the libelous statement has occurred[.]"); Hall v. Charter Commc'ns, LLC, Civil Action No. 3:17-CV-00497-GCM, 2018 WL 651345, at *3 (W.D.N.C. Jan. 31, 2018) (requiring publication "to a third party outside of the employment relationship"); Lee v. AT & T Mobility Servs. LLC, No. 5:11-CV-294-FL, 2013 WL 1246747, at *8 (E.D.N.C. Mar. 27, 2013) (same).

No. 3:08-CV-149-RJC-DSC, 2009 WL 2998004, at *3 (W.D.N.C. Sept. 15, 2009). Plaintiff alleges, in one instance, that the statement at issue "was made in writing," (Am. Compl. (Doc. 11) ¶ XVIII), while alleging elsewhere that the statement "was made orally." (Id. ¶ XXIII.) In laying out the facts at the beginning of her Complaint, however, Plaintiff merely states that "Mandy Long falsely accused Donna Adams in writing of falsifying a bank record." (Id. ¶ IX (emphasis added).) No facts are provided regarding any oral statement. It is referenced only in the cause of action for slander and no information is provided as to when it was made, where it was made, or who it was made to. There is no possibility of relief on the slander claim.

### C. Tortious Interference

In order to state a claim for tortious interference, Plaintiff must allege:

> (1) a valid contract between the plaintiff and a third person which confers upon the plaintiff a contractual right against a third person; (2) defendant knows of the contract; (3) the defendant intentionally induces the third person not to perform the contract; (4) and in doing so acts without justification; (5) resulting in actual damage to the plaintiff.

Mkt. Choice, Inc. v. New England Coffee Co., No. 5:08-CV-90, 2009 WL 2590651, at *6–7 (W.D.N.C. Aug. 18, 2009) (quoting Embree Constr. Grp., Inc. v. RAFCOR, Inc., 330 N.C. 487, 498, 411 S.E.2d 916, 924 (1992)). Plaintiff claims Defendant Long

-11-

"knew of the valid oral contract of employment between Plaintiff and First Tennessee Bank," and "intentionally induced First Tennessee Bank to terminate Plaintiff's employment for improper motives . . . involv[ing] age discrimination . . . with actual malice and legal malice and without legal justification . . . ." (Am. Compl. (Doc. 11) ¶ XXIX.) This court finds Plaintiff has a possibility of relief based on these allegations.

Defendants' primary answer to Plaintiff's tortious interference claim is legal in nature. Defendant Long is a non-outsider to the contract, and therefore has certain immunities with respect to interference with the contract. See, e.g., Benjamin v. Sparks, 173 F. Supp. 3d 272, 290 (E.D.N.C. 2016), aff'd, 986 F.3d 332 (4th Cir. 2021). Plaintiff's claim may ultimately fail if Long had a legitimate business justification for telling management that Plaintiff had falsified a document. However, at the pleading stage, Plaintiff need not preemptively provide facts to refute a plaintiff's privilege. See Embree Constr. Grp., 330 N.C. at 500 ("[I]nsofar as questions regarding the scope of defendants' privilege are evoked by the allegation that defendants acted 'without justification,' plaintiff's complaint need not address such questions in order to withstand a motion to dismiss for failure to state a claim."); Barker v. Kimberly-Clark Corp., 136 N.C.

-12-

App. 455, 462, 524 S.E.2d 821, 826 (2000) ("[N]on-outsider status is pertinent only to the question of whether the defendant's action was justified[.]"). Thus, Plaintiff need not refute Long's claim to non-outsider status at this stage. Plaintiff has alleged the elements of tortious interference, and the possibility of recovery on this claim cannot be completely excluded by the court.

## IV. CONCLUSION

Because this court cannot completely eliminate the possibility of relief on Plaintiff's claims of libel and tortious interference with contract, Plaintiff's Motion to Remand will be granted. Defendants' Partial Motion to Dismiss will be denied as moot.

For the aforementioned reasons,

**IT IS THEREFORE ORDERED** that Plaintiff's Motion to Remand to State Court, (Doc. 12), is **GRANTED** and that this case is hereby **REMANDED** for further proceedings in the Superior Court of Forsyth County, North Carolina.

**IT IS FURTHER ORDERED** that the Clerk of Court is directed to send a certified copy of this Memorandum Opinion and Order to the Clerk of Superior Court in Forsyth County.

**IT IS FURTHER ORDERED** that Defendants' Partial Motion to Dismiss, (Doc. 18), is **DENIED AS MOOT.**

-13-

This the 9th day of September, 2021.

　　　　　　　　　　　／s/ William L. Osteen, Jr.
　　　　　　　　　　United States District Judge